OPINION
{¶ 1} Defendant-appellant, James McCartney, appeals the decision of the Clinton County Court of Common Pleas to deny his motion to suppress, to convict him, and to sentence him for 20 counts of possessing sexually oriented matter involving a minor. We affirm the decision of the trial court.
 {¶ 2} Appellant and his girlfriend, Charleeta McPheeters ("McPheeters"), lived together at 66 John Street in Wilmington, Ohio. On September 23, 2000, McPheeters walked in on appellant looking at pornographic images of minors on his computer. An argument ensued between McPheeters and appellant because the couple had a three-year-old daughter together. McPheeters left the residence with her children.
 {¶ 3} On September 26, 2000, McPheeters went to the Wilmington Police Department to request a peacekeeper to accompany her to 66 John Street so she could retrieve her belongings. Officer Robert Wilson ("Officer Wilson") of the Wilmington Police Department telephoned Mark Kratzer ("Kratzer"), the landlord of 66 John Street, in order to ascertain McPheeters' status as a resident. Kratzer informed Officer Wilson that McPheeters had authority to enter the premises. Kratzer stated that she paid the rent for the past couple of months, and that she and appellant resided there together on a month to month oral agreement. Furthermore, McPheeters had the keys to enter the property and still had belongings within the residence.
 {¶ 4} McPheeters then informed Officer Wilson that there might be child pornography on appellant's computer. Officer Wilson obtained a written statement from McPheeters before taking her to 66 John Street. At the residence, McPheeters used her keys to enter the dwelling. Appellant's brother was in the dwelling at the time. Officer Wilson was taken to the bedroom where the computer was located and he secured the room.
 {¶ 5} Appellant's brother called appellant to inform him that police were in the residence. Appellant arrived at the residence a short time thereafter. Appellant requested that Officer Wilson leave the premises, however, Officer Wilson refused. A few hours later Detective Duane Weyland obtained a search warrant for the premises. Appellant's computer and 882 computer disks were confiscated.
 {¶ 6} Appellant was indicted on 533 counts of pandering sexually oriented matter involving a minor. Appellant moved to suppress the evidence obtained from his computer and the disks. On December 20, 2002, the trial court denied the motion based on its finding that the officers were permitted to enter appellant's residence based on McPheeters' consent and the landlord's acknowledgment that she lived there.
 {¶ 7} On June 5, 2003, pursuant to a plea agreement, the indictment was orally amended and appellant plead no contest to 20 counts of possession of materials depicting a minor participating in sexual activity, masturbation, or bestiality. Each count pertained to a specific image.
 {¶ 8} On September 19, 2003, appellant was sentenced to six months imprisonment for the first six counts, which were ordered to be served consecutively, and six months each on Counts Seven through Twenty to be served concurrently to the sentence in the first six counts. Appellant appeals the denial of his motion to suppress, his conviction, and his sentence, raising three assignments of error:
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "The trial court erred in denying defendant's motion to suppress."
 {¶ 11} Appellant argues that "the warrantless search of [his] residence violated his constitutional rights because it did not fall within any of the exceptions to the warrant requirement." Therefore, appellant maintains that the evidence discovered in his residence should have been suppressed.
 {¶ 12} Upon appellate review of a motion to suppress, while this court is "bound to accept the trial court's findings of fact which are supported by competent, credible evidence, we must independently determine as a matter of law, without deference to the trial court's conclusions, whether the findings of fact satisfy the appropriate legal standard." State v. Goins (Oct. 22, 1998), Franklin App. No. 98AP-266. In State v. DePew
(1988), 38 Ohio St.3d 275, 277, certiorari denied (1989),490 U.S. 1032, 109 S.Ct. 1773, the Supreme Court of Ohio determined that "[i]n reviewing a ruling on a motion to suppress, an appellate court must bear in mind that the weight of the evidence and the credibility of witnesses are for the trier of fact."
 {¶ 13} The Fourth Amendment normally prohibits the warrantless search of an individual's home. United States v.Haddix (C.A.6 2001), 239 F.3d 766, 767. However, the prohibition does not apply to situations in which voluntary consent has been obtained, either from the individual whose property is searched or from a third party who possesses common authority over the premises. Illinois v. Rodriguez (1990), 497 U.S. 177, 181,110 S.Ct. 2793. Common authority is not to be implied from a mere property interest that a third party has in the property, but from "mutual use * * * by persons generally having joint access or control for most purposes." United States v. Matlock (1974),415 U.S. 164, 172, 94 S.Ct. 988.
 {¶ 14} The burden of establishing that a third party possesses common authority to consent to a search rests with the state. Rodriguez, 497 U.S. at 181, 110 S.Ct. 2793. Consent to search can be provided by a "third party who possesse[s] common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock
(1974), 415 U.S. 164, 171, 94 S.Ct. 988; United States v. Moore
(C.A.6, 1990), 917 F.2d 215, 223. In Matlock, the United States Supreme Court defined "common authority" as mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.Matlock, 415 U.S. at 171. In Moore, it was held that a defendant's girlfriend could authorize a search because she had common authority over the searched residence and she shared a bedroom with the defendant. Moore, 917 F.2d at 223.
 {¶ 15} However, appellant argues that his girlfriend, "McPheeters, could not have given consent to search the residence because she had abandoned the residence two days prior to the search." Even if a third party does not possess actual common authority over the area that was searched, as appellant argues, the Fourth Amendment is not violated if the police relied in good faith on a third party's apparent authority to consent to the search. Rodriguez, 497 U.S. at 188-89, 110 S.Ct. 2793. Apparent authority is judged by an objective standard. Id. A search consented to by a third party without actual authority over the premises is nonetheless valid if the officer reasonably could conclude from the facts available that the third party had authority to consent to the search. Id.
 {¶ 16} In the present case, McPheeters went to the Wilmington Police Department and asked for police assistance to retrieve her belongings from 66 John Street. Officer Wilson called the landlord of 66 John Street and was advised that McPheeters had authority to enter the premises. The landlord stated that she paid the rent for the past couple of months, and that she and appellant resided there together on a month to month oral agreement. Furthermore, McPheeters had the keys to enter the property and still had belongings within the residence.
 {¶ 17} Based on the facts available, Officer Wilson could reasonably conclude that McPheeters had apparent authority to consent to the search. We find that McPheeters did have apparent authority to consent to the search, therefore, we need not consider whether she also possessed actual authority. Consequently, we find that the search of the residence did not violate appellant's constitutional rights because it fell within an exception to the warrant requirement.
 {¶ 18} Appellant also argues that the trial court erred when it determined that the exigent circumstances exception permitted officers to remain on the premises. Appellant asserts that it is well-settled that police may not create their own exigent circumstances, then rely on them to justify a search or a seizure.
 {¶ 19} Appellant correctly states the proposition of law. However, in Segura v. United States (1984), 468 U.S. 796,104 S.Ct. 3380, the United States Supreme Court addressed whether the temporary securing of a dwelling to prevent removal or destruction of evidence violates the Fourth Amendment. The court noted that the securing of premises to preserve the status quo while a search warrant is being sought is not violative of the Fourth Amendment when officers have probable cause to believe that evidence of criminal activity is present within the premises. Id. at 809-810, 104 S.Ct. 3380. Accordingly, the Supreme Court suggested that, while entry into a dwelling on less than exigent circumstances and a concurrent search therein violates a Fourth Amendment right, the less intrusive nature of a seizure associated with securing the premises until a search warrant arrives is constitutionally permissible. Id.
 {¶ 20} In the present case, police entered the residence pursuant to McPheeters' apparent authority to consent to a search. Therefore, the entrance and subsequent search of the residence did not violate appellant's constitutional rights.Rodriguez, 497 U.S. at 188-89, 110 S.Ct. 2793. Based upon McPheeters' information and "an image that an officer saw on the computer screen," the officers had probable cause to believe that evidence of criminal activity was present within the premises. Therefore, the officers secured the premises and obtained a search warrant to seize the computer and computer disks. We find that securing the premises to preserve the status quo while a search warrant was being sought did not violate appellant's constitutional rights. Segura, 468 U.S. at 809,104 S.Ct. at 3387.
 {¶ 21} Consequently, appellant's Fourth Amendment rights were not violated by the search or by securing the premises while a search warrant was being sought. Therefore, appellant's motion to suppress was properly denied. The first assignment of error is overruled.
 {¶ 22} Assignment of Error No. 2:
 {¶ 23} "There was insufficient evidence presented at trial to justify a finding of guilt."
 {¶ 24} Once a defendant pleads no contest to a felony indictment, the state is relieved of the duty to prove all of the elements of the offense beyond a reasonable doubt. State v.Bird (1998), 81 Ohio St.3d 582, 584. "[T]he defendant who pleads no contest waives the right to present additional affirmative factual allegations to prove that he is not guilty of the charged offense." State ex rel. Stern v. Mascio, 75 Ohio St.3d 422,424, 1996-Ohio-93. Once a plea of no contest has been entered, the trial court then need only determine whether "the indictment * * * contains sufficient allegations to state a felony offense[.]" Bird, 81 Ohio St.3d at syllabus. If the indictment sufficiently states the felony offense, "the court must find the defendant guilty of the charged offense." Id.
 {¶ 25} Appellant argues that the indictment does not contain sufficient allegations to state the felony offenses. Appellant maintains that the computer disks he had are insufficient to prove that he "possessed material showing a minor engaged in sexual activity, as the term `material' was defined * * * [by R.C. 2907.01] at the time [he] was indicted." Therefore, appellant contends that there is no proof that he possessed material showing a minor engaged in sexual activity, because the term "material," when he was indicted, did not explicitly include computerized files or images contained on computer disks. Consequently, appellant argues that "the only evidence presented to support the charges against [him] was the prosecutor's allegation that he possessed computer disks containing child pornography."
 {¶ 26} Crim.R. 11(B)(2) provides in part: "[t]he plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment[.]" A defendant waives his right to a finding of guilt beyond a reasonable doubt upon entering a no contest plea. State v. StowVeterans Assn. (1987), 35 Ohio App.3d 45, 46. However, a conviction is improper "when statements of factual matter presented to the court in support of the indictment negate the existence of an essential element of the offense charged." Id.
 {¶ 27} In the present case, appellant was originally indicted for 533 counts of Pandering Sexually Oriented Matter Involving a Minor pursuant to R.C. 2907.322(A)(1). At the June 5, 2003 plea hearing, the state orally amended the first 20 charges of the indictment to a violation of R.C. 2907.322(A)(5), which is possession of sexually oriented matter depicting a minor involved in sexual conduct, masturbation, or bestiality. Appellant entered a no contest plea to the 20 amended charges.
 {¶ 28} R.C. 2907.01, as it existed when appellant was indicted, defined "material" as:
 {¶ 29} "[A]ny book, magazine, newspaper, pamphlet, poster, print, picture, figure, image, description, motion picture film, phonographic record, or tape, or other tangible thing capable of arousing interest through sight, sound or touch."
 {¶ 30} R.C. 2907.322(A)(5) provides: "No person, with knowledge of the character of the material or performance involved, shall * * * Knowingly * * * receive, * * * possess, or control any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality."
 {¶ 31} A computer disk is a tangible thing. As a motion picture film needs a projector, a phonographic record needs a record player, and a tape needs a tape-player to be capable of arousing interest through sight or sound, a computer disk requires a computer screen or printer to arouse interest through sight or sound. We find that the computer disks at issue here can be categorized as tangible things capable of arousing interest through sight, sound, or touch. Cf. City of Tallmadge v. AvenueBook Store (Oct. 28, 1981), Summit App. No. 10038, at *8.
 {¶ 32} Furthermore, the state offered more than the prosecutor's mere allegation that appellant possessed computer disks containing child pornography. The state entered 20 images printed from the computer disks into evidence as exhibits. Each image relates to a single count of the indictment to which appellant pled no contest.
 {¶ 33} Additionally, the state noted that of the 882 computer disks confiscated from appellant's bedroom, "it was determined that 340 of those disks, or approximately one-third [possessed] the handwriting of the Defendant, James McCartney, and the handwriting was, in fact, the title on top of the disk."
 {¶ 34} In a felony case, where the defendant pleads no contest, "[t]he trial court needs only to examine the facts alleged in the indictment to determine whether a defendant is guilty of the crime charged." State v. Kutz (1993),87 Ohio App.3d 329, 337, citing State v. Thorpe (1983),9 Ohio App.3d 1, 2; Crim.R. 11(C)(4). Therefore, the trial court has authority in felony cases to determine whether the facts alleged in the indictment are sufficient to justify a conviction for the charged offense. Thorpe, 9 Ohio App.3d at 3.
 {¶ 35} The trial court found that the facts alleged in the indictment were sufficient to justify a conviction. The trial court stated that "the Defendant has been convicted of the following offenses, each of which is a fifth degree felony under the laws that existed from November 1st, 1997 through and including September 26th, 2000." Furthermore, the trial court stated, "I think it is important that I put the date in the Court believes * * * the item was possessed. He's been convicted under * * * R.C. 2907.332, paragraph (A), paragraph (5) * * * under the 20 counts of the indictment and the state's facts as presented at the No Contest plea was that the possession occurred on December 24th, 1998 in Count 1, July 14th, 1998, in Count 2, May 23rd, 1998 in Count 3, September 24th, 1998 in Count 4, October 23rd, 1998 in Count 5, February 5th, 1998 in Count 6, January 25th, 1998 in Count 7, December 24th, 1998 in Count 8, November 10th, 1998 in Count 9, December 24th, 1998 in Count 10, December 24th, 1998 in Count 11, December 24th, 1998 in Count 12, December 24th, 1998 in Count 13, July 22nd, 1998 in Count 14, December 24th, 1998 in Count 15, December 24th, 1998 in Count 16, January 8th, 1998 in Count 17, December 24th, 1998 in Count 18, February 4th, 1998 in Count 19, and April 29th, 1998 under the 20th count of the indictment."
 {¶ 36} We find that the facts alleged in the orally amended indictment are sufficient to justify a conviction for each of the charged offenses. Therefore, the second assignment of error is overruled.
 {¶ 37} Assignment of Error No. 3:
 {¶ 38} "The trial court erred in sentencing defendant to consecutive sentences of imprisonment."
 {¶ 39} Appellant argues that "the trial court erred when it held that [he] possessed each image on a separate day." Appellant accepts as true the state's facts as to when the images were downloaded, however, he maintains that "there is nothing to show that [he] is responsible for the downloading." Therefore, appellant argues that he possessed all of the images on a single day and the trial court erred in sentencing him to consecutive sentences.
 {¶ 40} Appellant pled no contest to possession of the images. The plea of no contest is not an admission of guilt but is an admission of the truth of the facts as alleged in the indictment. The trial court has authority in felony cases to determine whether the facts alleged in the indictment are sufficient to justify a conviction for the charged offense. Thorpe,9 Ohio App.3d at 3. The trial court found the facts alleged in the amended indictment sufficient to justify a conviction. As stated above, we find the facts in the orally amended indictment sufficient to justify a conviction for each of the charged offenses.
 {¶ 41} Appellant also argues that his consecutive sentences violate his constitutional protections against Double Jeopardy as well as R.C. 2941.25. Appellant contends that his offenses are of similar import. Therefore, appellant maintains that his "single act of possession, in reality, constitutes a single occurrence for sentencing purposes."
 {¶ 42} In order to determine whether offenses are of similar import, a court must determine whether the elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other." State v. Rance,85 Ohio St.3d 632, 636, 1999-Ohio-291. It has been held that when the same crime is committed against different victims, "a separate amimus exists for each offense for purposes of determining whether multiple convictions are permissible." Statev. Yodice, Lake App. No. 2001-L-155, 2002-Ohio-7344, at ¶ 25. Since appellant victimized several different children by possessing graphic images of them involved in sexual abuse, his possession of the images is not a single occurrence for sentencing purposes. Appellant's possession of the several images constitute different and separate crimes for which he could be sentenced to numerous counts.
 {¶ 43} Appellant also argues that he should have been sentenced to community control rather than to a term of imprisonment. R.C. 2929.13(B)(1) provides that when sentencing for a fifth-degree felony, "the sentencing court shall determine" whether any of the conditions set forth in R.C.2929.13(B)(1)(a)-(i) apply. R.C. 2929.13(B)(1) requires a court to determine whether certain factors are applicable to the offender. If the court finds that any one of these factors applies, it must next consider the seriousness and recidivism factors listed in R.C. 2929.12(B)-(E) in order to determine whether a prison term is consistent with the purposes and principles of sentencing and whether the offender is not amenable to an available community control sanction. R.C.2929.13(B)(2)(a). If the court answers these two questions in the affirmative, it is required to impose a prison term upon the offender. R.C. 2929.13(B)(2)(a). For a fifth-degree felony, the permissible terms of imprisonment are six, seven, eight, nine, ten, 11, or 12 months. R.C. 2929.14(A)(5).
 {¶ 44} Among the factors enumerated in R.C. 2929.13(B)(1) is whether "the offender caused physical harm to a person." R.C.2929.13(B)(1)(a). Another factor is whether "[t]he offender committed the offense * * * as part of an organized criminal activity." R.C. 2929.13(B)(1)(e). Another factor is whether "[t]he offender committed the offense * * *, while on probation." R.C. 2929.13(B)(1)(h).
 {¶ 45} In this case, the trial court found that "given the nature of the case, [appellant] did indeed cause physical harm to several persons. After reviewing the graphic nature of the images possessed by [appellant], depicting sexual abuse of minors, the Court believes these images of child pornography demonstrate beyond dispute that physical harm to children was caused." The trial court also stated that "the record reflects how [appellant] came into possession of the prescribed images on different dates * * * and * * * [c]hild pornography on personal computers * * * is reasonably considered an organized criminal activity. The Court finds that an offender who participates in an organized criminal activity in committing a fifth-degree felony of pandering sexually oriented matter involving a minor is no longer afforded the presumption of community control." Furthermore, the trial court found that "[appellant] was on probation from the Clinton County Municipal Court for an assault conviction for all of the offenses that were committed in this case on the dates * * * I've identified after May 29th, 1998."
 {¶ 46} Appellant admits that the court considered the R.C.2929.13(B)(1) factors when imposing his sentence. However, appellant argues that "the trial court stretched too far when it found that [he] caused harm to several persons." Additionally, appellant argues that "the record does not support the trial court's finding that [he] was on probation at the time of the offenses" because appellant contends that "[t]he offenses all took place on September 26, 2000 and [he] was not on probation at that time." Furthermore, appellant argues that "the court's finding regarding an organized criminal activity is not supported by the record."
 {¶ 47} "Both the Supreme Courts of the United States and Ohio have unequivocally found that children are seriously harmed by the mere possession of pornography in which they are depicted."State v. Maynard (1999), 132 Ohio App.3d 820, 827, citingState v. Meadows (1986), 28 Ohio St.3d 43. This court agrees and finds that appellant caused serious harm to several persons by possessing graphic images of those minors depicted in sexual activity. Furthermore, as stated above, we find the offenses took place on the prescribed dates, therefore, appellant was on probation for all of the offenses that were committed after May 29th, 1998.
 {¶ 48} The consumers of child pornography "victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects."United States v. Norris (C.A.5, 1998), 159 F.3d 926, 930. Therefore, it has been held that possessing child pornography constitutes part of an organized criminal activity that helps to create a market for a product in which children are physically and psychologically abused. See State v. Parker, Cuyahoga App. No. 81938, 2003-Ohio-3253, at ¶ 45. Consequently, we find the trial court did not err by finding that appellant, by possessing child pornography, was involved in an organized criminal activity.
 {¶ 49} The trial court also considered the seriousness and recidivism factors listed in R.C. 2929.12(B)-(E) in order to determine whether a prison term was consistent with the purposes and principles of sentencing. The trial court found that "[i]n analyzing the seriousness of the misconduct, the recidivism factors relevant to this offense, the Court is struck by the young age of many of the victims depicted on the graphic images of sexual abuse. The injury to these young victims was exacerbated by their young age. [Appellant] does have a prior offense from California in 1987 involving a lewd and lascivious act with a female under the age of 14 and at least one probation violation was filed against [appellant] by California authorities. * * * I believe [appellant] shows little remorse for his misconduct. * * * I find that recidivism is * * * likely * * *."
 {¶ 50} Consequently, the trial court correctly determined that appellant was not amenable to a community control sanction and properly sentenced appellant to consecutive terms of imprisonment. The third assignment of error is overruled.
Judgment affirmed.
Powell and Valen, JJ., concur.